UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| MARVIN ADAMS, | ) | |
|---|---|---|
| Plaintiff, | ) | Civil No. 13-26-ART |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| KAREN HOGSTEN, Warden, | ) | **& ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Marvin Adams is an inmate at the Federal Correctional Institution-McDowell ("FCI-McDowell") in Welch, West Virginia. At the time this case commenced, he was confined at the United States Penitentiary-Big Sandy ("USP-Big Sandy") in Inez, Kentucky. *See* R. 5. Adams filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. R. 1. He alleges that the Bureau of Prisons ("BOP") miscalculated his release date by denying him credit for time he spent in detention before his incarceration at USP-Big Sandy. *Id.* at 5. Adams has alleged facts sufficient to state a claim that the BOP erred in its calculation. Accordingly, his petition survives screening under 28 U.S.C. § 1915A.

**BACKGROUND**

Adams's habeas claim arises out of a tangled web of federal and state charges. In late 2008, Adams was on supervised release for a previous federal offense. *See* R. 1-1 at 1. That December, local police in Virginia arrested him for possessing cocaine, and Adams was soon released on bond. *Id.*; R. 1-4 at 3. Federal authorities then arrested

Adams for violating the conditions of his supervised release in January 2009. R. 1-1 at 1–2. In June 2009, Richmond police arrested Adams for assault and released him on bond the next day.[1] *Id.* at 2; R. 1-4 at 3. Richmond police then arrested Adams on a felon in possession of a firearm charge in February 2010. R. 1-1 at 2; R. 1-4 at 3. At this point, Virginia authorities apparently took Adams into custody at the Richmond City Jail.[2] R. 1-4 at 3. Later that month, Virginia dismissed Adams's cocaine possession charges, and a grand jury indicted him on a new state charge of possession of cocaine with intent to distribute. R. 1-1 at 2.

Thus, at the beginning of March 2010, Adams was in a state detention facility facing multiple state and federal charges. That month, Adams was temporarily removed to federal custody on a writ of habeas corpus *ad prosequendum*. R. 1-4 at 3. A federal district court found that Adams had violated the conditions of his supervised release and sentenced him to 51 months imprisonment. R. 1-1 at 2. However, Adams's federal sentence did not begin immediately. *See* R. 1-4 at 3. Instead, Adams returned to the Richmond City Jail at the end of March, and the state took its turn prosecuting Adams. *Id.* The state, jettisoning the firearm-related charge, tried and convicted Adams on the cocaine-related charge in July 2010. R. 1-1 at 2; R. 1-4 at 3. Adams was sentenced to five years imprisonment, with two years and ten months suspended. R 1-10 at 3.

A few features of Adams's federal and state sentences bear mention. The federal

---

[1] The fate of this charge is unknown to the Court.
[2] Adams alleges that his detention began on February 12, 2010—a few days after his arrest for possessing a firearm—and that this detention was at the instigation of the United States. R. 1-1 at 2. The exhibits filed in support of this argument suggest, however, that on that date the United States merely issued a detainer. R. 1-8 at 4. A detainer is a request filed by a criminal justice agency with the institution at which a prisoner is already incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent. *Carchman v. Nash*, 473 U.S. 716, 719 (1985). Adams was therefore already in state custody when the detainer was issued.

court, when sentencing Adams, did not specify whether his sentence would run concurrently with any subsequently imposed state sentence. *See United States v. Adams*, No. 3:99-328 (E.D. Va. Mar. 24, 2010) (docket sheet). The state court, on the other hand, explicitly designated its sentence "to run concurrent with any sentence he may now be serving." R. 1-10 at 3. And, the state court gave Adams credit for time he spent in state confinement while awaiting trial. *Id.* (citing Va. Code. § 53.1-187). Adams served his state sentence until December 2011, when he moved to USP-Big Sandy to begin his federal sentence. R. 1-4 at 3.

Adams now disputes his expected release date from federal prison. When calculating this date, the BOP did not give Adams prior-custody credit for his detention between February 2010 and December 2011. R. 1-1 at 2. According to Adams, this was an error. *Id.* If Adams were to get prior-custody credit for that entire period, he believes he could walk out of federal prison in September 2013. R. 9. As matters currently stand, however, he is not scheduled for release until September 2015. *Id.*

After Adams filed an administrative appeal, the BOP denied Adams's claim on two grounds. *See* R. 1-2 at 3; R. 1-3 at 4; R. 1-4 at 3–4. First, the BOP found that Adams was not exclusively in federal custody when the federal court sentenced him. *See* R. 1-2 at 3. Therefore, Adams's federal sentence began when he was physically released from state custody in December 2011. R. 1-2 at 3. Second, the BOP found that Adams's federal sentence did not merit a retroactive concurrent designation pursuant to 18 U.S.C. § 3621(b). R. 1-4 at 4.

In his petition for writ of habeas corpus, Adams challenges this outcome. Adams's argument hinges on Virginia's dismissal of its first charge, for cocaine possession, in

3

February 2010. He believes that when the state dropped that charge, it lost primary custody of his person. *See* R. 1-1 at 3–4. Primary custody then shifted to the federal court considering his violation of the conditions of supervised release. *See id.* To Adams, this means that his stint in detention between February 2010 and December 2011 should count toward his federal sentence. *See id.* He bases this argument on his interpretation of the Constitution and various federal statutes. *See id.* at 5–7. For the reasons discussed below, Adams's argument misunderstands the governing law. Still, he has properly stated a claim that the BOP should have given him prior-custody credit for his detention.

## ANALYSIS

Adams is an inmate, so the Court must screen his petition before allowing him to proceed with his claim. 28 U.S.C. § 1915A(a). The Court must dismiss an inmate's petition, or any portion thereof, that fails to state a claim upon which relief may be granted. *Id.* § 1915A(b). Because Adams is a pro se litigant, his petition need not meet the same stringent standards as pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). If dismissal is appropriate, the Court can act without waiting for a response from the government. *See Suaza v. Dep't of Justice*, 14 F. App'x 318, 319 (6th Cir. 2013) (citing 28 U.S.C. § 2243) (holding that a district court may dismiss a habeas corpus petition without requiring a response from the government if the petition, on its face, plainly shows that that the petitioner is not entitled to relief).

As a threshold matter, a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 is the proper vehicle for Adams's claim. Section 2241 is generally reserved for claims that challenge how a prisoner's sentence is carried out after the trial court imposes it. *See Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 2003). This includes

allegations, as in this case, that the BOP miscalculated a prisoner's release date by failing to credit him with time served. *See Woody v. Marberry*, 178 F. App'x 468, 471 (6th Cir. 2006) (collecting cases).

The question, therefore, is whether Adams has alleged facts sufficient to state a claim that the BOP miscalculated his release date. Adams's time in detention before December 2011 can be divided into three distinct periods, each requiring separate analysis. First, Adams awaited state court adjudication in the Richmond City Jail from approximately February 4, 2010, through March 4, 2010, and again from March 29, 2010, through July 27, 2010. *See* R. 1-4 at 3. The state court explicitly counted this pre-sentencing detention toward Adams's state sentence. R. 1-10 (citing Va. Code. § 53.1-187). Second, from March 4, 2010, to March 29, 2010, Adams was in the custody of the United States Marshal Service on a writ of habeas corpus *ad prosequendum*. R. 1-4 at 3. Finally, between July 27, 2010 and his release into federal custody in December 2011, Adams served his state sentence. *Id.*

**February 4–March 4 and March 29–July 27, 2010:** Whether Adams may receive credit for his detention in the Richmond City Jail turns on whether his state and federal sentences were intended to run concurrently or consecutively.

18 U.S.C. § 3585(b) governs how the BOP determines credit for prior custody. When, as here, a state detained a defendant before he started his federal sentence, the defendant receives credit toward his federal prison term for that state detention under two circumstances: (1) if the detention occurred as a result of the same offense for which the federal sentence was imposed, or (2) if the detention resulted from any other charge for which the defendant was arrested after committing the offense that led to his federal

5

sentence. *Id.* Crucially, the defendant is eligible for prior-custody credit only if his period of state detention has not already been credited against another sentence. *Id.*; *see Bridgeman v. Bureau of Prisons*, 112 F. App'x 411, 413 (6th Cir. 2004).

If Adams's state and federal sentences are consecutive, then this question is easy: he cannot get prior-custody credit for his time in Richmond City Jail. This is because the state court credited Adams for his pre-sentencing detention when it handed down his state sentence. R. 1-10 (citing Va. Code. § 53.1-187). Counting that same detention toward Adams's federal sentence would give him "improper double credit." *Broadwater v. Saunders*, 59 F. App'x 112, 114 (6th Cir. 2003).

If, however, Adams's state and federal sentences are concurrent, the answer changes. An exception to Section 3585(b)'s bar on double-dipping exists where a prisoner is subject to concurrent federal and state sentences and the federal sentence will run longer than the state sentence. In this situation, the prisoner is eligible for federal prior-custody credit (often called *Willis* credit) for time he spent in state detention before his sentences commenced, even if the state court credited that detention toward his state sentence. *See Everett v. Ives*, No. 11-180, 2012 WL 2179097, *1–*2 (E.D. Ky. June 13, 2012) (citing *Willis v. United States*, 438 F.2d 923 (5th Cir. 1971) and BOP Policy Statement 5880.28(2)(c)).

Adams's eligibility for prior custody-credit for the time he spent in the Richmond City Jail depends on unresolved factual and legal issues. Therefore, he has alleged facts sufficient to state a claim that the BOP erred in denying him credit for this period.

**March 4–29, 2010:** For this brief span, Adams was in the custody of the United States Marshal Service on a writ of habeas corpus *ad prosequendum*. R. 1-4 at 3. Adams

6

has properly stated a claim that he is eligible for prior-custody credit for his detention by the marshals. First, the purpose of Adams's detention—to enable the federal court to try his case—triggers Section 3585(b)'s prior-custody credit analysis. *See* 18 U.S.C. § 3585(b)(1) (granting prior-custody credit for time spent in official detention "as a result of the offense for which the sentence was imposed"). Second, the Virginia court may not have applied Adams's time in federal custody toward his state sentence. *See* R. 1-10 (citing Va. Code. § 53.1-187 (providing that a defendant may receive credit against his state sentence for "all time actually spent by the person . . . in a *state or local* correctional facility awaiting trial" (emphasis added))). For these reasons, Adams's claim that the BOP erred when it denied him prior-custody credit for his detention between March 4, 2010, and March 29, 2010 survives screening. *Cf. Perez v. Holland*, No. 12-112, 2013 WL 501207, at *3 (E.D. Ky. Feb. 11, 2013) (denying entitlement to prior-custody credit for time spent on writ of habeas corpus *ad prosequendum* because the defendant received credit toward his state sentence).

**July 27, 2010–December 28, 2011:** During this period, Adams served his state sentence. Once again, whether he receives credit toward his federal sentence for his time in state prison depends on the consecutive or concurrent nature of his federal sentence. If Adams's sentences are concurrent, then his release date from federal prison obviously should include the time he spent in state prison. If his sentences are consecutive, then the opposite calculation applies. *See* 18 U.S.C. § 3585(b); *Woody*, 178 F. App'x at 471.

The Court cannot answer this question at this juncture because the federal district court that sentenced Adams did not explicitly state whether its sentence was consecutive

or concurrent.³ A federal district court has the discretion to designate a sentence as consecutive to or concurrent with an anticipated state sentence that has not yet been imposed. *See Setser v. United States*, 132 S. Ct. 1463, 1473 (2012). Where the sentencing court fails to make this designation, however, difficulties arise. Before 2012, courts considering habeas petitions applied the presumption that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." 18 U.S.C. § 3584(a). That is, if the sentencing court never said whether its sentence would run consecutively or concurrently, the sentence was automatically deemed consecutive. *See, e.g.*, *Chappell v. United States*, No. 07-412, 2008 WL 160650 (E.D. Ky. Jan. 15, 2008).

In 2012, however, the Supreme Court weighed in, stating that Section 3584(a) does not apply when a federal district court hands down its sentence before any state sentence is imposed. *Setser*, 132 S. Ct. at 1467. In other words, there is no longer a statutory presumption that the federal sentence will run consecutively an anticipated state sentence. The effect of *Setser*'s interpretation of Section 3584(a) on cases like Adams's has not yet been comprehensively analyzed by the federal courts. Therefore, the Court cannot determine whether Adams has stated a claim upon which relief may be granted, as required by 18 U.S.C. § 1915A, without the benefit of a response from the Warden.

## CONCLUSION

Accordingly, it is **ORDERED** that:

---

³ The state court's apparent intention for its sentence to run concurrently with Adams's federal sentence makes no difference. *See* R. 1-10 at 3; R. 1-13. A state court's intent is not binding on federal courts or the BOP. *See Ramirez v. Withers*, No. 6:13-43, 2013 WL 2903278, at *4 (E.D. Ky. June 13, 2013); *cf. Setser v. United States*, 132 S. Ct. 1463, 1471 (2012) ("If a prisoner . . . starts in state custody, serves his state sentence, and then moves to federal custody, it will always be the Federal Government . . . that decides whether he will receive credit for the time served in state custody.").

(1) The proper defendant in this case is Karen Hogsten, the Warden at FCI-McDowell. The Clerk shall **SUBSTITUTE** Hogsten for R. Farley as defendant.

(2) Kevin Schad, Assistant Federal Public Defender, Cincinnati Office, Southern District of Ohio, is **APPOINTED** to represent Adams in this case. Mr. Schad can be contacted at 250 E. 5th Street, Suite #350, Cincinnati, OH, 45202; at (513) 929-4834; and at kevin_schad@fd.org. The interests of justice require appointment of counsel in this case because of the complexity of the legal and factual matters in dispute. *See* 18 U.S.C. § 3006A(a)(2)(B). Adams's previous submissions indicate that he meets the financial eligibility requirement for court-appointed representation. *See id.*; R. 3.

(3) Adams's motion to expedite the proceedings, R. 9, **GRANTED**.

(4) Adams's motion for an order directing the Warden to appear in this case, R. 13, is **GRANTED**.

(5) The Warden is directed to **RESPOND** to Adams's petition, R. 1, by **Tuesday, September 3, 2013**. Due to the complexity of the issues presented in Adams's petition, the Court finds good cause to extend the three-day deadline prescribed by 28 U.S.C. § 2243. **The Warden's response shall separately analyze each of the three periods of detention discussed in this order.**

(6) Adams shall **REPLY** to the Warden's response by **Tuesday, September 10, 2013**.

(7) A hearing is **SCHEDULED** for **Friday, September 20, 2013**, at **10:30 a.m.** at the United States District Courthouse in **Covington, Kentucky**. Once again, because the issues in this case are complex and appointed counsel will require time to prepare for the hearing, the Court finds good cause to extend the deadline prescribed by 28 U.S.C. § 2243.

(8) The Clerk of the Court shall **PREPARE** a Service Packet, consisting of the following documents, for service of process:

    (a) A completed summons form;

    (b) The habeas petition, R. 1, and attachments, R. 1-1–R. 1-16;

    (c) This order; and

    (d) A completed USM Form 285.

(9) The Clerk of the Court shall **COPY** the Service Packet, and the Deputy Clerk shall **PRESENT** the Service Packet and copies to the United States Marshals Service ("USMS") in Lexington, Kentucky.

(10) The USMS shall **SERVE** a Service Packet **personally** upon Warden Karen Hogsten, through arrangement with the Federal Bureau of Prisons.

(11) To complete service, the USMS shall **SEND** one copy each of the Service Packet **by certified or registered mail** to:

    (a) The Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

    (b) The Office of the Attorney General of the United States in Washington, D.C.; and

    (c) The Office of the Federal Bureau of Prisons in Washington, D.C.

(12) Due to the expedited nature of these proceedings, the undersigned's chambers will also **EMAIL** one copy of this order today to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky and to Mr. Schad.

(13) Adams **SHALL**:

    (a) Immediately advise the Clerk's Office of any change in his current mailing address. Failure to do so may result in the dismissal of this case.

    (b) Communicate with the Court solely through his counsel. The Court will disregard correspondence or pleadings sent by Adams since he now has counsel.

This the 23rd day of August, 2013.

Signed By:
*Amul R. Thapar* AT
United States District Judge